GARRETT, J.
*1163 The plaintiff, Easter McGee, appeals from a summary judgment granted in favor of the defendant, Allstate Insurance Company ("Allstate"), that dismissed her uninsured/underinsured motorist ("UM") claim against Allstate. Allstate answers the appeal, claims that McGee's appeal is frivolous, and requests an award of costs and attorney fees. For the following reasons, we affirm the trial court judgment but deny Allstate's claim for costs and attorney fees.
FACTS
The facts are not in dispute. McGee was a passenger in a 1981 Corvette owned and driven by her nephew, Walter Perry. A wheel came off, Perry lost control of the vehicle and crashed into a tree. No other vehicles were involved in the accident. McGee was injured. Perry had liability and UM coverage with Allstate. Allstate paid the liability policy limits to McGee, who released Perry, but reserved her rights to pursue UM coverage. She sued Allstate, alleging that her damages exceeded the liability coverage limits and seeking recovery under the UM coverage of the policy.[1]
Allstate filed a motion for summary judgment, claiming that McGee could not recover under both the liability and the UM provisions of the policy under the circumstances presented here. McGee was injured in a one-car accident, the host driver was at fault, his liability insurance provided coverage and the policy excluded from UM coverage vehicles with liability coverage under the policy.
A hearing was held on August 14, 2017. The trial court granted summary judgment in favor of Allstate and dismissed McGee's claims. McGee appealed in November 2017. Allstate answered the appeal, arguing that McGee's appeal is frivolous because the exact issue, raised by the same lawyer, was rejected by this court in January 2018, in Mills v. Mills , 51,509 (La. App. 2 Cir. 1/10/18), 243 So.3d 1245.
UM COVERAGE
McGee argues that the trial court erred in granting summary judgment in favor of Allstate, dismissing her claims for UM coverage. This argument is without merit.
Legal Principles
Appellate courts review motions for summary judgment de novo , using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Peironnet v. Matador Res. Co. , 12-2292 (La. 6/28/13), 144 So.3d 791 ; Bank of Am., N.A. v. Green , 52,044 (La. App. 2 Cir. 5/23/18), 249 So.3d 219.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth , 10-0343 (La. 1/19/11), 57 So.3d 1002. Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A *1164 motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
In the matter before us, there are no factual issues in dispute. We are presented with a legal issue - does McGee have the right to recover under the UM provisions of the Allstate policy?
Discussion
McGee maintains that the trial court erred in ruling that she could not recover under both the liability and UM coverage of the same insurance policy where the host driver was solely at fault. She claims this result is contrary to the purpose of the UM statute and violates certain provisions of it. She argues that any exclusions of UM coverage in the insurance policy violate the purpose of the statute and cannot be given effect. She contends that the insurance policy contains contradictory provisions creating ambiguity which should be construed against Allstate. She asks us to disregard or overrule well-settled jurisprudence because she contends it is wrong.
McGee argues that the intent of the UM statute is to provide full coverage to persons injured in collisions through no fault of their own. She cites La. R.S. 22:1295(1)(a)(i) which provides:
The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized in this Section. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously *1165 issued to him by the same insurer or any of its affiliates. The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.
McGee states that La. R.S. La. 22:1295(2)(b) is the operative provision in this case.[2] That statute provides:
For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication.
McGee urges that, under a "literal interpretation" of La. R. S. 22:1295(2)(b), where an auto has liability coverage less than the losses of an insured or a guest passenger, the insured or guest passenger may recover under the UM policy of the insured vehicle. She claims this is true even though there has been recovery on the liability portion of the policy on the insured vehicle. She maintains that the statute does not contemplate that the at-fault vehicle, for which liability coverage is owed, and the underinsured vehicle for which UM coverage is owed, must be two separate vehicles. McGee contends that any provisions or exclusions in an insurance police which limit or prohibit such coverage are contrary to the purpose of the UM statute, are against public policy, and cannot be given effect.
McGee's arguments and interpretation of the UM statute have been previously considered in numerous cases in the jurisprudence and have been uniformly rejected. The issues raised by McGee were first considered by the Louisiana Supreme Court in Breaux v. Gov't Emp. Ins. Co. , 369 So.2d 1335 (La. 1979). In that case, a guest passenger was killed in an auto accident. Her parents sued the insurer of the host driver, Government Employees Insurance Company ("GEICO"), and asserted a UM claim against their own insurer, Traders and General Insurance Company ("Traders"), because their damages exceeded the available liability coverage under the GEICO policy. The plaintiffs settled their claims with GEICO and released *1166 it under both the liability and UM portions of the policy. Traders argued that the GEICO policy afforded UM coverage to the deceased guest passenger and that coverage was primary.
In the trial court, the plaintiffs were awarded a judgment against Traders, but the judgment was reduced by the amount received by the plaintiffs in the settlement with GEICO. The plaintiffs appealed and the appellate court applied the provision now designated as La. R.S. 22:1295(2)(b) to hold that the plaintiffs could recover under both the liability and UM portions of the GEICO policy issued to the at-fault host driver.
The supreme court granted writs in the matter and reversed the appellate court. The sole issue before the supreme court was whether the GEICO policy afforded UM coverage to the deceased guest passenger when the sole cause of the accident was the negligence of the host driver of the insured vehicle and the GEICO policy contained a provision, similar to that found in the case sub judice, which excluded UM coverage to an insured vehicle under the policy. The supreme court specifically considered whether the exclusion in the GEICO policy was invalid as being in derogation of the mandatory requirements set forth in the UM statute. The supreme court found that:
As to coverage under the uninsured motorist provisions of a particular policy, the statute contemplates two distinct vehicles; the motor vehicle with respect to which uninsured motorist coverage is issued and the "uninsured or underinsured" motor vehicle. In addition, as to each policy containing uninsured motorist coverage, the statute distinguishes between the person insured under the policy in question and the owner or operator of the uninsured or underinsured motor vehicle.
The court rejected the argument that the at-fault host driver in a single car accident could be both the person insured under the policy and the owner or operator of an uninsured or underinsured vehicle. The court found that the UM statute created distinctions between (1) persons insured under a particular policy providing UM coverage and owners or operators of UM vehicles and (2) the vehicle with respect to which such insurance is issued and the UM vehicle. The court reasoned that the UM statute does not mandate protection under the host driver's UM coverage when the sole cause of the accident is the negligence of the host driver. The supreme court held that the clause in the policy at issue in that case, which purported to deny uninsured motorist coverage to the plaintiffs, was valid and was not in derogation of the mandatory requirements set forth in the UM statute.
The issue was again considered by the supreme court in Nall v. State Farm Mut. Auto. Ins. Co. , 406 So.2d 216 (La. 1981). In that case, the plaintiff's minor son was injured while a guest passenger. The at-fault driver was insured under a policy with GEICO, which provided liability and UM coverage. The plaintiff had two separate insurance policies with State Farm, each of which provided UM coverage. GEICO paid the policy limits for medical expenses and the bodily injury liability limit of $10,000. State Farm paid the UM policy limits under one policy, but refused to pay anything under the other policy. The plaintiff sued to recover under his other UM policy and the UM coverage provided by the GEICO policy. The trial court rejected the plaintiff's demands and the court of appeal affirmed. The supreme court was called upon to decide whether the plaintiff was entitled to recover under the UM coverage on both State Farm policies and on the GEICO policy.
*1167 After deciding that the plaintiff could not stack UM coverage on his two State Farm policies, the supreme court considered whether the plaintiff could recover under both the UM and liability portions of the GEICO policy covering the host driver where his negligence caused the accident. The GEICO policy contained an exclusion, similar to that at issue here, which excluded an insured vehicle from the definition of a vehicle for which UM coverage would be owed. Citing the reasoning in Breaux , supra , the supreme court stated it was apparent that the UM statute does not mandate protection under the host driver's UM coverage when the cause of the accident is the negligence of the host driver. The clause in the GEICO policy which purported to deny UM coverage to the plaintiff was valid and was not in derogation of the mandatory requirements set forth in the UM statute.
In Solice v. State Farm Mut. Auto. Ins. Co. , 488 So.2d 1159 (La. App. 2 Cir. 1986), this court was presented with the issue of whether an injured passenger could recover under the UM portion of an insurance policy where the policy excluded from its definition of an uninsured vehicle a vehicle insured under the policy. Based upon Breaux , supra , and Nall , supra , we found that the provision was valid and was not in derogation of the UM statute. We stated:
The contemplation of the uninsured motorist statute is that the uninsured coverage is to be applicable to the driver of a vehicle other than the one identified as covered by the policy of liability insurance containing the required uninsured motorist coverage. Therefore, a policy provision which requires this result does not violate the terms of the statute.
In Gardner v. Allstate Ins. Co. , 575 So.2d 883 (La. App. 2 Cir. 1991), writ denied , 578 So.2d 139 (La. 1991), the plaintiff was injured when a boat trailer became disconnected from the vehicle he was riding in, causing an accident and injuring the plaintiff. The plaintiff recovered under the liability portion of the host driver's insurance. The policy contained an exclusion from UM coverage for an insured auto. This court found that, under the provisions of the policy, the boat trailer was an "insured auto" even when it accidentally became detached while in tow. Therefore, under Breaux , supra , and Nall , supra , the insurance policy provision was valid and the plaintiff was not entitled to both liability coverage and UM coverage.
In Bamburg v. State Farm Mut. Auto. Ins. Co. , 26,324 (La. App. 2 Cir. 12/7/94), 647 So.2d 447, this court stated that, simply put, one cannot be insured with respect to liability coverage and underinsured with respect to UM coverage under the same insurance policy.
In Nelson v. Robinson , 44,059 (La. App. 2 Cir. 4/22/09), 10 So.3d 356, a father was driving his two children to school and was solely at fault in causing an accident that injured all three occupants of the car. The driver had liability and UM coverage with Allstate, which paid under the liability portion of the policy. The UM portion of the policy contained an exclusion specifying that an uninsured auto is not a motor vehicle defined as an insured auto under the liability portion of the policy. The children sued to recover under the UM coverage also. The trial court allowed recovery, finding that by Acts 1987, No. 444, the following provision was added to the UM statute, which is now found in La. R.S. 22:1295(1)(a)(iii) :
This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.
The trial court reasoned that this amendment allowed an insured passenger to recover under both the liability and the UM
*1168 portions of the negligent host driver's insurance policy despite policy language prohibiting such recovery.
This court reversed the trial court judgment and found the ruling to be contrary to the established jurisprudence. We determined that the 1987 amendment to the UM statute did not overrule the well-settled law that an injured passenger may not recover under both the liability and the UM portions of the host driver's policy where the host driver was 100% at fault in causing the accident. We concluded that the 1987 amendment was intended to extend geographically the scope of UM coverage beyond cases where the policy was issued in Louisiana and the vehicle was garaged in this state. We found that the amendment had no effect on the rule of law set forth in Breaux , supra , and its progeny. We also found that the language in the insurance policy prohibiting such coverage was valid and enforceable.
Recently in Mills v. Mills , supra , this court considered this same issue, of whether both UM and liability coverage are available under an insurance policy where the host driver is at fault.[3] The issue was raised by the same attorney representing McGee in this matter. In Mills , we found that, based upon the well-settled jurisprudence, when the insurance policy contains an exclusion of the vehicle named in the policy from being an uninsured vehicle, the insured claimants cannot recover under both the UM and liability provisions of the same policy.
Interestingly, in Cannon v. Allstate Ins. Co. , 595 So.2d 745 (La. App. 4 Cir. 1992), writ denied , 598 So.2d 359 (La. 1992), the fourth circuit found that the exact UM insurance exclusion at issue in this case did not violate public policy and that the plaintiff guest passenger could not recover under both the liability and UM provisions of the insurance held by the at-fault host driver in a one-car accident.
McGee cites Johnson v. Jackson , 504 So.2d 88 (La. App. 2 Cir. 1987), writ denied , 506 So.2d 1230 (La. 1987), for the proposition that an insurer could be required to pay both UM and liability coverage under the same policy for the same accident. The facts of Johnson are vastly different from those presented here. In that case, Johnson was a guest passenger in his own vehicle, which was driven by another person. There was an accident involving another vehicle and both drivers were at fault. Johnson recovered liability from the insurer of the other driver and UM coverage under his own insurance policy. Johnson then sought to recover liability under his policy based upon the host driver's negligence. The policy contained a reduction clause specifying that payment under the UM portion would reduce what a person could recover under the liability portion of the policy. In finding that the reduction clause was contrary to public policy and would not be applied, this court discussed Breaux , supra , and Nall , supra , and found those cases to be distinguishable. In those cases, the accidents involved one vehicle and the host driver was solely at fault. Therefore, UM and liability could not be recovered under the same policy, largely because the host driver could not be both insured and uninsured.
In Johnson , we discussed jurisprudence dealing with accidents involving more than one vehicle where the drivers of the vehicles were jointly liable for the accident. The jurisprudence held that a guest passenger could recover under the liability and UM coverage of the host vehicle if the host driver was jointly liable with the other driver who was uninsured or underinsured. Liability coverage was based on the negligence of the host driver and UM coverage *1169 was based on the negligence and inadequate coverage of the other driver, not the negligence and inadequate coverage of the host driver.
In Johnson , this court noted that it had previously been held that the reduction of UM coverage below that required by statute, by directing credit for payments from any source, is contrary to public policy. This court found that it logically followed that, where the reduction of either limit, UM or liability, prevents the insured from receiving the full benefit of the UM coverage to which he is entitled, that reduction clause is inconsistent with the mandatory coverage requirement of the UM statute.
Johnson dealt with different issues and a different fact situation. It simply does not support McGee's argument that she is entitled to both UM and liability coverage under the facts presented here.
The rule established in Breaux , supra , and Nall , supra , has also been followed by this and other courts consistently. In addition to the cases outlined above, see for example Leboeuf v. Lloyd's of La. , 572 So.2d 347 (La. App. 1 Cir. 1990), writ denied , 575 So.2d 393 (La. 1991) ; Ramirez v. State Farm Mut. Auto. Ins. Co. , 07-785 (La. App. 3 Cir. 12/5/07), 971 So.2d 474 ; Hasha v. Calcasieu Par. Police Jury , 539 So.2d 779 (La. App. 3 Cir. 1989), writ denied , 541 So.2d 872 (La. 1989) ; Coco v. Allstate Ins. Co. , 391 So.2d 50 (La. App. 3 Cir. 1980) ; Insurance Co. of N. Am. v. Patton , 95-0732 (La. App. 4 Cir. 12/14/95), 665 So.2d 1312. See also W.S. McKenzie & H. Alston Johnson, III, Insurance Law & Practice , § 4:18, in 15 Louisiana Civil Law Treatise (4th ed. 2012), and the numerous cases cited therein which have uniformly found that, where a policy excludes an insured vehicle from the definition of an uninsured or underinsured vehicle, a guest passenger cannot recover under both the liability and the UM provisions of the policy where the host driver is at fault. The cases have also held that the exclusion does not contravene the purpose of the UM statute and is not contrary to public policy. The reasoning in these cases is sound and the essential facts are the same as those presented here. McGee has failed to demonstrate any error in this long line of jurisprudence interpreting the UM statute. Accordingly, her argument in this regard is rejected.
McGee asserts that the insurance policy itself provided for UM coverage, but then excluded UM coverage under the facts presented here by precluding a vehicle listed as an insured vehicle under the policy from the definition of an uninsured vehicle for purposes of UM coverage. McGee contends that this created an ambiguity which should be construed against Allstate so as to allow UM coverage.
McGee cites the general provision from the policy regarding UM coverage which states:
Part VI
Economic-Only Uninsured Motorists Insurance - Coverage ED
We will pay those damages which an insured person is legally entitled to recover from the owner or operator or an uninsured auto because of:
(1) bodily injury sustained by an insured person, .... Bodily injury ... must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto.
The policy includes in the definition of an "insured auto" a motor vehicle described on the policy declarations. The policy then specifies that "an uninsured auto is not a motor vehicle defined as an insured auto under Part I, Automobile Liability Insurance, of this policy."
The interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved on *1170 motion for summary judgment. Mills v. Mills , supra . The starting point in analyzing insurance policies is the principle that the policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Sensebe v. Canal Indem. Co. , 10-0703 (La. 1/28/11), 58 So.3d 441 ; Heath v. Cont'l Cas. Co. , 50,860 (La. App. 2 Cir. 8/10/16), 200 So.3d 911.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.
Insurers are entitled to limit their liability and to impose reasonable conditions upon the policy obligations absent a conflict with statutory provisions or public policy. Shephard v. AIX Energy, Inc. , 51,965 (La. App. 2 Cir. 5/23/18), 249 So.3d 194. An insurer has the burden of proving that a loss comes within a policy exclusion. Ilgenfritz v. Canopius U.S. Ins. , 51,530 (La. App. 2 Cir. 8/9/17), 243 So.3d 1109. Because insurance policies are adhesionary in nature, any contradiction or ambiguity in the contract must be strictly construed against the insurer, the party who drafted the policy. La. C.C. art. 2056. However, the fact that a policy provides general coverage, but then subjects it to certain exclusions, does not make the policy ambiguous. Bilyeu v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA , 50,049 (La. App. 2 Cir. 9/30/15), 184 So.3d 69, writ denied , 15-2277 (La. 2/19/16), 187 So.3d 462 ; McCoy v. City of Shreveport , 49,428 (La. App. 2 Cir. 11/19/14), 152 So.3d 242, writ denied , 14-2665 (La. 3/13/15), 161 So.3d 640.
As stated above, the policy contains a provision excluding from the definition of an uninsured vehicle a vehicle that is, in fact, insured under the policy. As discussed above, provisions such as these have been standard in insurance policies for decades and have not been found to violate the UM statute or public policy. We do not find that this provision created any ambiguity.[4]
FRIVOLOUS APPEAL
Allstate answered the appeal in this matter and asserted that McGee's argument in this case is frivolous, warranting the award to Allstate of costs and attorney fees associated with the appeal. This argument is without merit.
Legal Principles
The court may award damages for a frivolous appeal in civil cases as provided by law. URCA 2-19. La. C.C.P. art. 2164 grants the appellate court the authority to address the issue of frivolous appeal from the proceedings conducted before it. The provision states:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
*1171 La. C.C.P. art. 2164 is penal in nature and is to be strictly construed. Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed. Damages for a frivolous appeal are only allowed when it is obvious that the appeal was taken solely for delay, that the appeal fails to raise a serious legal question, or that counsel is not sincere in the view of the law he advocates, even though the court is of the opinion that such view is not meritorious. Cox v. O'Brien , 49,278 (La. App. 2d Cir. 8/13/14), 147 So.3d 809, writ denied , 14-1907 (La. 11/21/14), 160 So.3d 972 ; Delta Land & Inv., LLC v. Hunter Estates, Inc. , 51,069 (La. App. 2 Cir. 1/11/17), 211 So.3d 1255, writ denied , 17-0264 (La. 3/31/17), 217 So.3d 364. See also Nesbitt v. Nesbitt , 46, 514 (La. App. 2d Cir. 9/21/11), 79 So.3d 347, writ denied , 11-2301 (La. 12/2/11), 76 So.3d 1178 ; Pratt v. Louisiana St. Med. Ctr. in Shreveport , 41,971 (La. App. 2 Cir. 2/28/07), 953 So.2d 876.
Although an appeal or answer to the appeal is required for appellate review and modification of the trial court's award of damages, the issue of frivolous appeal first arises at the appellate court level and, therefore, may be adjudicated and remedied by this court. Delta Land & Inv., LLC v. Hunter Estates, Inc. , supra .
Any doubt regarding whether an appeal is frivolous must be resolved in the appellant's favor. City of Ruston v. Perritt , 30,896 (La. App. 2 Cir. 9/23/98), 718 So.2d 1044 ; Miralda v. Gonzalez , 14-0888 (La. App. 4 Cir. 2/4/15), 160 So.3d 998.
Discussion
Allstate contends that this appeal is frivolous, warranting the award of costs and attorney fees on appeal, because the legal issue in this matter is well settled and the same argument was asserted by the same attorney and was rejected by this court in January 2018 in Mills v. Mills , supra . We note that this appeal was taken in November 2017, before the decision in Mills was rendered. Also, Mills involved some additional matters that are not at issue in this case. Further, Allstate did not urge any claims below for any relief pursuant to La. C.C.P. art. 863.[5] Allstate's arguments *1172 pertaining to frivolous litigation are being urged for the first time before us.
In opposing Allstate's claim that this appeal is frivolous, McGee's attorney asserts that the argument was made in good faith and that he "whole-heartedly believes and asserts that the UM statute should be applied to find that Allstate is liable to Easter McGee for UM coverage in this case." He essentially maintains that decades of jurisprudential interpretation of the UM statute on the issue presented here are wrong. He implores this court to reverse itself and to ignore longstanding and well-reasoned jurisprudence on this exact issue by other courts of this state and the Louisiana Supreme Court. As set forth above, McGee's arguments have failed to persuade us. Because appeals are favored, we decline to award appellate attorney fees to Allstate. It appears that counsel for McGee is sincere in the view of the law advocated. Also, it does not appear that the appeal was taken for purposes of delay. However, in the future, counsel for McGee should consider himself to have been twice warned by this court on this issue.
CONCLUSION
For the reasons stated above, we affirm the trial court's grant of summary judgment in favor of Allstate, rejecting McGee's claims for UM coverage. We reject Allstate's claim that the appeal is frivolous, warranting the imposition of attorney fees. Costs in this court are assessed to McGee.
AFFIRMED; FRIVOLOUS APPEAL CLAIM DENIED.

McGee also sued her own insurer, Safeco Insurance Company of Oregon ("Safeco"), for UM coverage. Safeco filed a motion for summary judgment because McGee rejected UM coverage on her policy. At the same hearing in which Allstate's motion for summary judgment was granted, the trial court granted Safeco's motion for summary judgment and dismissed McGee's claims. She did not appeal that ruling.

The origins of La. R.S. 22:1295(2)(b) are found in Acts 1972, No. 137, which became effective on January 1, 1973. At that time, the UM statute was amended to provide an additional definition of uninsured motor vehicle and was found in La. R.S. 22:1406(D)(2)(b). The new provision stated:
For the purposes of this coverage the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the uninsured motorist coverage carried by an insured.
The provision was again amended by Acts 1974, No. 154, § 1. At that point La. R.S. 22:1406(D)(2)(b) was amended to its present form. No further substantive amendments were made to this provision, which now is designated as La. R.S. 22:1295(2)(b). Acts 2003, No. 456, § 3, renumbered the UM statute as La. R.S. 22:608. Acts 2008, No. 415, § 1, effective January 1, 2009, renumbered the UM statute as La. R.S. 22:1295.

Several other insurance coverage issues were also raised in this case.

McGee argues that the jurisprudence has stricken provisions in insurance policies that conflict with the purpose of the UM statute, finding that they violate public policy. McGee cites Mednick v. State Farm Mut. Auto. Ins. Co. , 09-183 (La. App. 5 Cir. 1/26/10), 31 So.3d 1133, which held that insurance policy language excluding from the definition of an uninsured motor vehicle any government-owned vehicle was against public policy, and unenforceable. See also Powell v. Allstate Ins. Co. , 233 So.2d 38 (La. App. 2 Cir. 1970), which refused to enforce an insurance policy provision which excluded a municipally owned vehicle from UM coverage. These cases differ factually from the present case and are not dispositive of this matter.

La. C.C.P. art. 863 provides, in part:
A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:
....
(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.
....
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
....
G. If the court imposes a sanction, it shall describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed.